SAM BRAMAN & SON *v.* THE HARTFORD STEAM BOILER INSPECTION & INSURANCE CO.

[Cite as Sam Braman & Son v. Hartford Steam Boiler Inspection & Ins. Co., 9 Ohio Misc. 203.]

(No. 762577—Decided December 14, 1966.)

Common Pleas Court, Cuyahoga County.

*Mr. Sidney B. Fink,* for plaintiff.
*Mr. Lawrence E. Oliphant, Jr.,* and *Messrs. Squire, Sanders & Dempsey,* for defendant.

HODDINOTT, J. (sitting by assignment from Monroe County): This cause was heard by the court, a jury having been waived, upon a stipulation of facts, testimony of witnesses and exhibits.

Plaintiff is in the wholesale poultry and egg business. Part of its equipment is a 50-horsepower ammonia compression-type refrigerating unit. After working hours on July 27, 1961, a cleaning employee of the plaintiff carelessly tossed a 14-foot plank which struck the handwheel of a ⅜" valve on the unit. The valve was opened slightly, ammonia escaped, and some poultry was contaminated before the mishap was discovered. Claim is made for the loss under the defendant's casualty policy, No. 89-13528.

The policy insures against four types of "accidents," one of which is defined as

"3. A sudden and accidental cracking of the Object, or any part thereof, if such cracking permits the leakage of contents." The parties stipulate that the refrigerating unit and valve in question are within the meaning of the word "object." The plaintiff claims the partial opening of the valve was a "cracking" within the meaning of the policy. The defendant, on the other hand, claims the word means a fissure or an incomplete parting of metal.

Both meanings are recognized in Webster's Third New International Dictionary (1961) where the verb "crack," of which cracking is the gerund, is defined as:

"1. to break or burst: as * * *

b: to break (anything hard or brittle) so that clefts, chinks or fissures appear on the surface * * *

"5: to break open or into: as * * *

d: to open slightly ([crack] a valve) * * *"

Random House Dictionary of the English Language (1966) contains these definitions of "crack":

"3. to break without complete separate of parts; become fissured * * *

"16. *Informal.* to open and drink (a bottle of wine, liquor, etc.)"

This court will take judicial notice of definitions in standard dictionaries. See *Andrews* v. *Tax Commission of Ohio* (1939), 135 Ohio St. 374, 376, 21 N. E. 2d 106, 107, 14 O. O. 250, 251. The numbering of definitions in Webster's Third is explained on page 6a of the Preface:

"In definitions of words of many meanings the earliest ascertainable meaning is given first. Meanings of later derivation are arranged in the order shown to be most probable by dated evidence and semantic development."

Thus, according to Webster's Third, the original meaning of "crack" was "break"; the meaning of "open" came later. Random House Dictionary recognizes the latter meaning only as it applies to a beverage bottle and designates that meaning as "informal," which is defined as

"3. Suitable to or characteristic of casual, familiar, but educated speech or writing."

In a legal document such as an insurance policy there is some likelihood that the older, more widely recognized, more formal meaning of a word is meant.

This court must look, not only to dictionary definitions, but also the context in which a word is used. In construing the words "cracking or fracturing," the court said in *First Nat. Bank of Boone* v. *Royal Indemnity Co.* (1922), 193 Iowa 221, 186 N. W. 934, 938:

"* * * even words of everyday and familiar use are not always used in precisely the same sense. To ascertain the effect of a given word in a given writing it must be read in the light of its context, of the instrument as a whole, and of the circumstances attendant upon its use."

The context of "cracking" in the insurance policy in question makes clear that what is meant is an incomplete separation or fissuring caused by concealed or inherent defects in the material, or negligence in operation of the machinery, or both together. This is the meaning given to the word in the *First National Bank* case, 186 N. W. at 938. There are four types of "accident" covered by the defendant's policy:

"1. A sudden and accidental tearing asunder of the Object, or any part thereof, caused by pressure of contents therein or caused by vacuum therein, but cracking shall not constitute a sudden and accidental tearing asunder;

"2. A sudden and accidental crushing inward of the Object, or any part thereof, caused by pressure of contents therein or caused by vacuum therein;

"3. A sudden and accidental cracking of the Object, or any part thereof, if such cracking permits the leakage of contents; or

4. A sudden and accidental bulging of the Object, or any

part thereof, which is caused by pressure of contents therein and which immediately prevents or makes unsafe the continued use of the Object;''

Nos. 1, 2 and 4 all belong to the class of casualties which arise from latent defects or negligent operation, or both. No. 3's inclusion in the tabulation is an indication it belongs to the same class. Moreover, No. 1 implies that a ''cracking'' is the same type of casualty as a ''tearing asunder'' by expressly excluding it from the definition of that term. (Only a cracking followed by leakage is covered, under No. 3.) In other schedules (Nos. 1 and 2) of the policy, boilers, generators, heaters and other vessels are insured against the same four casualties except that ''cracking'' is confined to ''any cast metal part.'' There ''cracking'' obviously means a partial separation caused by defective materials or negligent operation. In a refrigerating unit there are metals which are not cast. No. 3 simply intends to cover partial separation of these metals from the same two causes. It is unreasonable to extend No. 3 to cover the negligent opening of a valve, not in the course of operation.

The policy exceptions support the view that the policy covers only casualties arising from defective materials or negligent operation:

''but Accident shall not mean the tearing asunder, crushing inward, cracking or bulging of any rubber hose, flexible connection, safety disc, rupture diaphragm or fusible plug, nor leakage at any valve, fitting, seal, joint or connection.''

Flexible materials vulnerable to an outside impact are not indemnified. Discs, diaphragms and plugs, designed to give way easily, are not covered. Leakage at a valve, fitting, seal, joint or connection is excluded. ''Leakage'' is defined in Webster's Third as

''1a: the act, process or an instance of leaking * * *''
''Leak'' is defined as

''1a. to enter or escape through a hole, crevice, or other opening usu. by fault or mistake.''

Leakage of valves, fittings, seals, joints or connections is likely to occur through negligence of persons unconnected with the operation of the machinery, or from external forces, such as a settling of the building.

The plaintiff's damage was unquestionably the result of

leakage at a valve. The express exclusion of such a contingency from the coverage of the policy is by itself enough to bar recovery.

The rule of strict construction of a policy against the insurer does not apply in this case. As Taft, C. J., said in *Morfoot* v. *Stake* (1963), 174 Ohio St. 506, 507, 190 N. E. 2d 573, 574, 23 O. O. 2d 144, 145:

A policy of insurance which is reasonably open to different interpretations will be construed most favorably for the insured. *Butche* v. *Ohio Casualty Ins. Co.* (1962), 174 Ohio St. 144, 187 N. E. 2d 20; *Home Indemnity Co.* v. *Village of Plymouth* (1945), 146 Ohio St. 96, 101, 64 N. E. 2d 248. However, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.

Judgment is awarded to the defendant against the plaintiff at its costs.

Counsel for the defendant is requested to prepare a journal entry in accordance with this opinion, submit it to counsel for plaintiff for approval, and then transmit it to this court.

*Judgment for defendant.*